Honorable Karen A. Overstreet
Chapter 11

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In Re:<br><br>CONSOLIDATED MERIDIAN FUNDS, a/k/a MERIDIAN INVESTORS TRUST, et al.<br><br>Debtors. | Consolidated Case No. 10-17952<br><br>**TRUSTEE MARK CALVERT'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION** |

**TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)**

OSBORN MACHLER
2125 Fifth Avenue
Seattle, WA 98121
206-441-4110

# I. INTRODUCTION

Two months after the close of evidence, and over a month and a half after closing arguments, Moss Adams, LLP ("Moss Adams") attempts to supplement the record with supposed "evidence" that it could have introduced at the evidentiary hearing. But because this "evidence" could have been introduced at the evidentiary hearing but was not, it is not "new" and cannot now be considered by this Court. As this Court stated in *In re Beck*, "[m]atters that were not presented in the first instance by a well-represented party are not considered on a motion for reconsideration." 12-13990, 2012 WL 4715863 at *2 (Bankr. W.D. Wash. Oct. 2, 2012) (citing *Aronson v. Dog Eat Dog Films, Inc.*, 738 F.Supp.2d 1104, 1118 (W.D. Wash. 2010)). Moreover, Moss Adams attempted to admit certain of the "new" evidence at the hearing and the Court properly denied the requests. Moss Adams has no basis upon which to disturb those rulings now.

More importantly, even if Moss Adams had introduced this new "evidence" at the evidentiary hearing, it would not have changed the result. The "evidence" Moss Adams points to is the supposed production of *some* – not *all*, but *some* – trial balances and loan ledgers, and the Trustee's alleged access to *some* trial balances from Meridian's records. But, as the Court stated at the hearing on the Trustee's Motion for Fees, "there's a lot more to this case than trial balances and loan ledgers." [5/17/12 Tr. at 34:22-35:4] Indeed, as this Court's detailed decision makes clear, this dispute centers on Moss Adams' failure to produce all documents as required (not just trial balances and loan ledgers) and the numerous ways in which Moss Adams failed to take all reasonable steps to comply with the Subpoena and about Moss Adams' misrepresentations to counsel and the Court regarding its compliance. For that reason, for the additional and separate reason that the "evidence" presented by Moss Adams is misleading, and for the other reasons discussed herein, nothing about the "new" evidence affects the Court's well-reasoned decision to hold Moss Adams in contempt.

| TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952) - 1 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |
|---|---|

## II.     LEGAL STANDARD

"Motions for reconsideration are disfavored in this district." *In re Beck*, 12-13990, 2012 WL 4715863 (Bankr. W.D. Wash. Oct. 2, 2012). Local Civil Rule 7(h)(1), made applicable in Local Bankruptcy Rule 9013-1(h), provides the court should "ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority *which could not have been brought to its attention earlier with reasonable diligence*." (emphasis added).

"Local Rule 7(h) is the functional equivalent of a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e)." *Beck*, 2012 WL 4715863 at * 2 (citing *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp 2d 1104, 1118 (W.D. WA 2010); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir.1991). Federal Rule of Civil Procedure 59(e), which applies here pursuant to Federal Rule of Bankruptcy Procedure 9023, allows a court to alter, amend or vacate a prior order. *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir.1994). However, Rule 59(e) is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890–91 (9th Cir.2000). Motions under Rule 59(e) "should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.2d 1253, 1255 (9th Cir.1999).

Motions for reconsideration are properly denied where they merely present arguments already raised in prior proceedings. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) ("The motion was properly denied here because [] it presented no arguments that had not already been raised in opposition to summary judgment."); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991) (motion for reconsideration properly denied because it "presented no arguments which the court had not already considered and rejected"). Likewise, motions for reconsideration "may not be used to raise arguments or present evidence for the first time when they could

| | |
|---|---|
| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 2 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 3 of 20

reasonably have been raised earlier in the litigation." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000).

### III. ARGUMENT

**A. THE COURT DID NOT COMMIT MANIFEST (OR ANY) LEGAL ERROR IN HOLDING THAT MOSS ADAMS COULD BE HELD IN CONTEMPT ABSENT A PRIOR COURT ORDER COMPELLING COMPLIANCE**

**1. The Court Correctly Found That The Subpoena Was A Court Order, The Violation of Which Can Give Rise To Contempt**

This Court previously considered and rejected Moss Adams' *repeated* argument that the Subpoena was not a court order, the violation of which can give rise to contempt. [Dk. No. 1051 at 17:1-20:19] Because the basis of Moss Adams' argument that the Court committed manifest legal error is nothing more than a reiteration of assertions previously made and rejected, Moss Adams' arguments of legal error are not appropriate argument to raise in this motion for reconsideration.[1] *Backlund*, 778 F.2d at 1388; *Fuller*, 950 F.2d at 1442.

Even if the Court revisits Moss Adams' argument, the Court's Order rejecting Moss Adams' contention was correct and not based upon any legal error. As the Ninth Circuit unambiguously stated in *Pennewalt,* cited by this Court at page 18 of its Decision, "a subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions." 708 F.2d at 494, n. 5.[2] Likewise, as recognized by this Court at page 20 of its Decision, "the text of

---

[1] While Moss Adams argues the Court committed manifest legal error in holding that a prior court order compelling compliance was unnecessary before holding it in contempt, Moss Adams has not presented any new legal authority on that issue. Moss Adams continues to rely on *In re App. of Kingdom of Morocco*, 2009 WL 105786 (S.D. N.Y. April 16, 2009) and *Walkwer v. Asset Mktg. Ins. Svs.*, 2012 WL 827010 (S.D. Cal. Mar. 9, 2012). Neither of those hold a prior court order compelling compliance is required, and neither involve a situation like the one here where, among other things, Moss Adams did not object to the Subpoena and repeatedly told the Trustee and the Court that all documents had been produced when that representation was absolutely false.

[2] *See also U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010) ("[W]e reject BCI's argument that a subpoena issued under Rule 45(a)(3) by an attorney as an officer of the court is not itself a court order subject to contempt sanctions if disobeyed."); 1991 Advisory Committee Note to Fed. R. Civ. Proc. 45(a) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions.").

| | |
|---|---|
| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 3 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 4 of 20

Rule 45, including the admonition concerning contempt, appears in full on the second page of the Subpoena." Accordingly, Moss Adams' request for reconsideration on the grounds that the Subpoena was not a Court Order must be rejected. The Court was correct in holding that the Subpoena is a Court order, the violation of which can give rise to contempt, and the Court thus did not commit any legal error, manifest or otherwise.

### 2. This Court Identified Numerous "Unique Facts" That Led It To Conclude The Absence Of A Prior Order Compelling Compliance Was Not Necessary To Hold Moss Adams In Contempt If Moss Adams Failed To Take All Reasonable Steps To Comply

In that portion of its Decision rejecting Moss Adams' argument that a prior court order compelling compliance was necessary to hold Moss Adams in contempt, the Court identified ***several*** "unique facts" which led it to conclude "the absence of an order to compel prior to the entry of the order on December 26, 2012, does not prevent the Court from ordering sanctions if Moss Adams failed to take all reasonable steps to comply." [Dk. No. 1051 at 20:16-19.] Even though "unique facts" were not legally required to support the Court's holding on that issue (because the Subpoena is itself a court order that can give rise to contempt), the Court nonetheless correctly identified the follow "unique facts," which made contempt appropriate here since the court also found Moss Adams failed to take all reasonable steps to comply :

- "Moss Adams [] never objected to the Subpoena." [Dk. No. 1051 at 19:1]

- "More importantly, Moss Adams and its counsel repeatedly assured the Trustee and his counsel that all documents responsive to the Subpoena, including both electronic and paper documents, had been produced, despite the fact that such assurances were incorrect." [*Id.* at 19:1-5]

- "As late as November 2, 2012, in response to the contempt motion, Moss Adams stated that on August 23, 2010, it sent 'two boxes of paper files to a copy vendor, which copied the paper documents and coordinated delivery to the Trustee' … [But] at trial Quirk was not able to testify as to when she sent the Lighthouse Documents for copying and admitted that they had not been assembled as of August 23, 2010, so could not have been sent to K&L Gates at that time." [*Id.* at 19:6-21]

- "[T]he information produced on the two discs in response to the Subpoena was not

| TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S<br>MOTION FOR RECONSIDERATION OF THE COURT'S<br>APRIL 5, 2013 MEMORANDUM DECISION<br>**(No. 10-17952)** - 4 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |
|---|---|

> produced in the same form as maintained by Moss Adams and [] the files were not labeled or organized in any way to correspond to the document categories listed in the Subpoena." [*Id.* at 19:28-20:1]

Moss Adams' argument that the Court committed manifest legal error by holding Moss Adams in contempt without finding a violation of a court order compelling compliance ignores these "unique facts" which led to the Court finding a prior court order compelling compliance was unnecessary. For that reason alone, Moss Adams' argument that the Court committed manifest legal error has no merit.

### 3. Moss Adams' Arguments About Whether The Trustee Had To Identify What Was Missing From The Production And Whether He Suffered Prejudice Are Irrelevant To The Court's Contempt Finding And Are Wrong

Moss Adams confuses the issues which it argues that the Court committed manifest legal error in finding Moss Adams could be held in contempt even absent a prior court order compelling compliance. Specifically, Moss Adams purposely tries to shift the focus away from the unique facts and instead raises on a red herring, namely (a) whether the Trustee knew trial balances were missing from the production and (b) whether the Trustee suffered prejudice from noncompliance. The Court's Decision did not depend on either, as made clear by the above "unique facts" unrelated to what the Trustee knew was missing and what prejudice he suffered. Thus, even if one assumes, as Moss Adams suggests, that the Trustee knew trial balances were missing and that he failed to inform Moss Adams of the same, that does not materially change anything about the Court's legal analysis nor does it change Moss Adams repeated noncompliance with the Subpoena and failure to timely produce thousands of pages of critical work papers (i.e. the Lighthouse documents). Simply put, trial balances and loan ledgers had nothing to do with the "unique facts" that led the Court to hold a prior court order compelling compliance was unnecessary.

### i. The Trustee Was Not Required to Identify What Was Missing From The Production

As the Court has made abundantly clear on repeated occasions, a party responding to a

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 5 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |
|---|---|

subpoena can be held in contempt even if the subpoenaing party did not identify missing documents and did not suffer prejudice.[3] For instance, the Court specifically held:

> Moss Adams places great emphasis on the fact that it repeatedly asked the Trustee to identify what he thought was missing from the production. **The burden, however, is not on the Trustee to sift through what has been produced (12,000 pages of documents over two-and-a-half years) and try to predict what has been held back.** It is the burden of the recipient of a Subpoena to comply fully with the terms of the Subpoena. [Dk. No. 1051 at 19:23-28 (emphasis added)]

The Court also recently reaffirmed this position when it rejected Moss Adams' "failure to mitigate" argument in connection with the Trustee's Motion for Fees, stating "it is not the Trustee's obligation to determine what's missing from thousands of pages of documents, when it is instead the obligation of the producing party to produce its documents." [5/17/13 Tr. at 35:8-12]

In addition, even though the Court also stated that "[g]iven the state of the information produced, it was not even possible for the Trustee to ascertain what might be missing" [Dk. 1051 at 20:1-3] the Court's holding that a prior court order compelling compliance was unnecessary did not depend in any way on that fact. Rather, as the Court has repeatedly made clear, the burden was on Moss Adams to comply, not on the Trustee to tell Moss Adams what was missing from its own production. Moreover, the Court's comment came in the context of the fact that Moss Adams' failure to comply with Rule 45's requirement that documents be produced either as kept in the ordinary course of business or labeled to correspond to a subpoena's document categories made it more difficult to ascertain what was missing, which finding was absolutely correct.[4]

---

[3] Even though the Trustee was not required to identify missing documents, the evidence demonstrated the Trustee's counsel repeatedly told Moss Adams that the production did not include all responsive work papers and emails – i.e. the Trustee did identify documents he believed were missing – namely emails and work papers. [*See, e.g.*, Exhibit D26]

[4] Moss Adams incorrectly claims, in footnote 4 of its brief, that the two discs of documents it produced in August 2010 were produced in the ordinary course of business. Mr. Kallander admitted the two discs did not contain folder names *or* files names for the information on the discs, and thus the documents were obviously not produced as kept in the ordinary course of business. [2/14 Tr. (P.M.) at 75:2-12] While Moss Adams eventually produced an index of folder names, it never produced a list of file names, nor did it ever reproduce the documents electronically with folder and files names nor did it produce the documents *with the PFX software* so they could be reasonably read and

Continued on the next page

| | |
|---|---|
| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 6 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

Thus, the issue of whether the Trustee knew what was missing from the production, and informed Moss Adams of the same, has nothing to do with whether Moss Adams could be held in contempt. Hence the supposed "facts" put forth by Moss Adams do not change the correctness of the Court's legal reasoning; the Court did not commit any legal error, manifest or otherwise.

### ii. A Party May Be Held In Contempt Even If Prejudice Is Not Shown

Just as the Court correctly held Moss Adams could be held in contempt absent a prior court order compelling compliance even if the Trustee did not identify for Moss Adams which documents were missing from its production, the Court correctly held prejudice to the Trustee was unnecessary for Moss Adams to be held in contempt. Contempt focuses on the conduct of the responding party and ultimately turns on whether the responding party took "all reasonable steps within [its] power to ensure compliance." [Dk. No. 1051 at 17:11-19 (citing *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992)] Moss Adams has not, and cannot, cite to any authority requiring that prejudice be suffered by the subpoenaing party before a responding party can be held in contempt. Rather the prejudice issue comes into play only once a party has been found in contempt and the Court is determining the appropriate sanctions to award for that contempt. It is for this reason that the Court's discussion of the prejudice suffered by the Trustee came in the "Civil Sanctions" section of the Decision [Dk. No. 1051 at 22:13-24:22] and not in the section of the Decision discussing Moss Adams' failure to take all reasonable steps to comply [Dk. No. 1051 at 20:20-21:12]. The Court recently reiterated this principle at the hearing on the Trustee's Motion for Fees, when it discussed prejudice suffered by the Trustee as a result of missing loan balance and trial ledgers:

---

Continued from the previous page

organized until years later after motion practice had begun. Thus, the evidence is undisputed that Moss Adams did not produce the documents as kept in the ordinary course of business. While Moss Adams references a statement by Mr. Avenatti at the December 7, 2012 hearing in this matter regarding how the documents were produced, that statement is quoted by Moss Adams out of context as the parties were discussing whether Moss Adams had to produce Exhibit "O" in native electronic form. Mr. Avenatti was referring to the fact that Moss Adams' original production included production of documents in their native, electronic form (albeit without file and folder names).

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 7 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |
|---|---|

> [M]y current belief is that that relates more to whether Mr. Calvert is entitled to the $50,000 in compensation he is seeking, than it matters to my ruling on contempt. Because on contempt, the question is did Moss Adams use reasonable efforts to comply with the subpoena. I found that it did not. And there are *many factors* that went into that.
> [5/17/13 Tr. at 50:17-23 (emphasis added)]

Accordingly, Moss Adams' latest argument about whether the Trustee suffered prejudice has no relevance to whether Moss Adams could be held in contempt absent a prior order compelling compliance. The prejudice "issue" relates solely to the appropriate sanctions once a party has been found in contempt. The Court thus did not commit manifest legal error when it held a prior court order compelling compliance was unnecessary before holding Moss Adams in contempt for its failure to take all reasonable steps to comply.

### B. MOSS ADAMS HAS NOT PRESENTED ANY NEW FACTS THAT COULD NOT HAVE BEEN BROUGHT TO THE COURT'S ATTENTION EARLIER WITH REASONABLE DILIGENCE[5]

Moss Adams' Motion does not set forth any new "facts" that could not have been brought to the Court's attention earlier with reasonable diligence. Rather, Moss Adams' Motion sets forth "facts" that Moss Adams knew about at the time of the evidentiary hearing, or which Moss Adams with reasonable diligence would have known about at the time of the evidentiary hearing. Specifically, Moss Adams claims that (a) the discs it produced in August 2010 contained "numerous trial balances and loan ledger information" from its PFX system and server files; and (b) that the Trustee had access to loan ledger information and trial balances directly from Meridian's files. However, even if true and even if admissible, the Court's ruling must stand.

#### 1. Moss Adams Knew Or Should Have Known At Trial Whether It Produced Any Trial Balances From Its PFX System And Server, But Failed To Present Such Evidence

At the time of the evidentiary hearing Moss Adams knew, or with reasonable diligence

---

[5] The Trustee objects to the declarations of Mr. Urquhart and Ms. LaRussa field by Moss Adams in their entirety, on the grounds that they have been untimely submitted after the close of evidence and do not contain any "new facts." The matters alleged therein were known, or should with reasonable diligence have been known, to Moss Adams at the time of the hearing.

| TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952) - 8 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |
|---|---|

should have known, whether it produced "numerous trial balances and loan ledgers."[6] Moss Adams called three witnesses -- Mr. Kallander (its general counsel), Ms. Quirk (the paralegal in charge of the production) and Mr. Urquhart (the lead audit partner at Moss Adams for the Meridian Funds) -- who were involved in Moss Adams' production in August 2010. One of those three Moss Adams' witnesses certainly was, or should have been, familiar with the production and could and should have come forward with such evidence to the extent it exists. Indeed, it is completely disingenuous for Moss Adams to argue that "[i]f the Trustee had reviewed the PFX and server documents, he would have found the trial balances he claims were missing" [Mot. at 7:13-15] and at the same time claim it had no obligation to review its own production, know what was included in its own production and bring such evidence to the attention of the Court. Moreover, as this Court has repeatedly stated, "[t]he burden [] is not on the Trustee to sift through what has been produced (12,000 pages of documents over two-and-a-half years) and try to predict what has been held back." Moss Adams continues to misunderstand this critical point.

In an effort to escape its clear lack of reasonable diligence, Moss Adams claims in its Motion that trial balances and similar documents were not raised at the evidentiary hearing until around 5:30 p.m.. [Mot. at 7:2-5] Moss Adams' claim is false. The Trustee's counsel specifically questioned Mr. Kallander, starting at 2:17 p.m., about whether trial balances had been produced, and Mr. Kallander testified he did not know whether any had been produced. [2/14/13 Tr. (P.M.) at 38:25-40:9] Thereafter, Moss Adams further questioned Mr. Kallander on re-direct and then proceeded to call and elicit testimony from Ms. Quirk and Mr. Urquhart. Moss Adams did not to ask Mr. Kallander, Ms. Quirk or Mr. Urquhart a single question about whether Moss Adams' production included any trial balances or similar documents, even though Mr. Kallander had been cross-examined on that topic. Moss Adams also called Ms. LaRussa, who supposedly printed out Moss Adams' entire production (and supposedly stacked it up on the side of the courtroom) and

---

[6] As will be discussed below, it is undisputed that Moss Adams did not timely produce *all* trial balances and loan ledgers, because Moss Adams did not produce any hard copy work papers pre-dating adoption of the PFX system in 2004, all of which would have been in the "Lighthouse" documents, which were not produced until late 2012.

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 9 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |

likewise failed to ask her a single question about whether the production included any trial balances or loan ledgers.

Had Moss Adams been reasonably diligent, it would have (a) solicited testimony regarding its production of any trial balances and loan ledgers; or (b) pre-marked as an exhibit a copy of the discs it produced in August 2010, put a witness on the stand to lay the foundation for the authenticity of the discs, and introduced the disc into evidence such that they could have been referenced during closing arguments two weeks later.[7] Moss Adams, however, failed to do so.

Thus, Moss Adams had ample opportunity to present evidence regarding whether it produced any trial balances or loan ledgers from its PFX system/server, and the "new facts" it seeks to present on that issue on reconsideration are "facts" that reasonable diligence required be brought to the Court's attention earlier.[8]

### 2. Moss Adams Knew Or Should Have Known At Trial Whether The Trustee Likely Had Access To Trial Balances And Loan Ledgers From Meridian's Records

On the issue of the Trustee's access to trial balances or loan ledgers directly from Meridian records, Moss Adams has likewise not come forward with any "new facts" which could not have been brought to its attention earlier with reasonable diligence.[9]

Moss Adams first points to a loan ledger documents from *its own files* which it claims were prepared by Meridian and would have been part of Meridian's records accessible to the Trustee.[10] This argument lacks foundation, but in any event it could and should have been made by Moss

---

[7] Moss Adams made a belated attempt two weeks after the evidence was closed and on the eve of closing arguments, to supplement the records with discs it claimed included its production. The Court properly rejected that request as untimely and as lacking foundation regarding the authenticity of what was on the discs.

[8] This is the second time Moss Adams has tried to supplement the record with information regarding alleged production of trial balances. It also did so on the eve of closing arguments (two weeks after the evidentiary hearing) when it filed a Declaration of Scott Urquhart, which the Court properly refused to consider, and when it took the actions set forth in footnote 7 herein.

[9] As set forth in more detail below, the Trustee never denied having access to some of Meridian's records. Perhaps the Trustee's testimony regarding access to Meridian's records was inartfully worded, but it was accurate.

[10] As discussed below, the records of Meridian that the Trustee had were not trustworthy and were inaccurate, which is no surprise seeing as Berg was running a Ponzi scheme. That is one reason the Trustee sought documents from Moss Adams.

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 10 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |
|---|---|

Adams at the evidentiary hearing. Reasonable diligence required Moss Adams to be familiar with *its own production*, and Moss Adams would obviously know that copies of documents it received from Meridian might also be in Meridian's files. Moreover, Moss Adams had full knowledge (or should have had full knowledge) that the Trustee had access to at least some Meridian files. Moss Adams pre-marked prior to the hearing its exhibit P12, which is a copy of the Power Point presentation the Trustee gave to Investors in May in May 2011. Exhibit P12 was admitted into evidence and clearly stated, on slide 24, that the Trustee had access to some Meridian records. Slide 24 of Exhibit P12 also explicitly noted there were "Misrepresentations in Meridian's Records", including (a) "'fake' loans booked," (b) "Paid off or sold loans retained on records," and (c) "Inflated loan balances represented on records." Thus, it was no secret that the Trustee had access to some loan ledger type information, and Moss Adams knew or should have known of this "fact" at the evidentiary hearing. Moss Adams nonetheless failed to raise this "fact" and thus cannot offer it in support of a motion for reconsideration.

*Second*, Moss Adams offers two documents in an effort to show the alleged "new fact" that the Trustee had access to Meridian's Quickbooks:[11] (a) a page of the Trustee's billing entries related to exporting Quickbooks files for Funds II and V; and (b) the "FBI 302" notes of the Trustee's August 24, 2010 interview the FBI,[12] which the FBI agent drafted on August 31, 2010. [Mot. at 9:10-10:1] That the Trustee had access to some Meridian Quickbooks, however, is not a "new fact." Exhibit P12, again at slide 24, clearly notes that the Trustee had encountered misrepresentations in Meridian Quickbooks. Moss Adams could and should have brought this "fact" to the Court's attention earlier either at the evidentiary hearing or at closing arguments. That is all the more so given that the billing entry offered by Moss Adams was part of exhibit P15 pre-marked by Moss Adams in advance of the evidentiary hearing. Because Moss Adams was

---

[11] As discussed below, not all of Meridian's books were kept on Quickbooks and Quickbooks did not provide loan trial balance detail.

[12] The FBI's 302 notes are also hearsay and would not have been admissible if offered at the evidentiary hearing and cannot be considered now. To the extent the Court considers the LaRussa declaration (to which the Trustee objects), Plaintiff objects to consideration of the FBI 302.

| | |
|---|---|
| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 11 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

able to pre-mark this exhibit, reasonable diligence required Moss Adams to bring the exhibit to the Court's attention and offer it into evidence at the evidentiary hearing, which Moss Adams failed to do. Accordingly, the Trustee's alleged access to Meridian Quickbooks is not a ground for reconsideration as it is not a "new fact" that could not have been brought to the Court's attention earlier with reasonable diligence.

## C. THE ALLEGED "NEW FACTS" RAISED IN MOSS ADAMS' MOTION DO NOT CHANGE THE COURT'S ANALYSIS THAT CONTEMPT WAS APPROPRIATE

Even assuming that the truth of the alleged "new facts" offered by Moss Adams, those "new facts" do not in any way change the fact that Moss Adams failed to take all reasonable steps to comply with the Subpoena, which is the legal standard for contempt. That is, the Trustee's access (or lack thereof) to trial balances and loan ledgers had little or nothing to do with the Court's ruling that Moss Adams failed to take all reasonable steps to comply. The Court identified numerous facts which led to its decision to hold Moss Adams in contempt for failing to take all reasonable steps to comply. Specifically:

- Moss Adams did not issue "any written notification and instruction to those who would be required to preserve and assemble documents." [Dk. No. 1051 at 20:25-28]

- Mr. Kallander "left compliance with the Subpoena largely in the hands of a paralegal despite knowing that Meridian and Berg were in the news." [*Id.* at 20:28-21:1]

- "Neither Mr. Kallander nor Ms. Quirk provided Mr. Urquhart with written instructions even though Mr. Urquhart had never responded to a Subpoena." [*Id.* at 21:1-3]

- Ms. Quirk did not "check[] off the categories of information requested to confirm she had covered everything. That simple process would have revealed that paper documents were not ready for production at that time, that emails she saved in a separate folder were omitted, and that billing records were required by the Subpoena which had not been uploaded onto the discs or produced in hard copy format." [*Id.* at 21:7-12]

- "No effort was made by Ms. Quirk or anyone else at Moss Adams to preserve emails on the firm's Outlook server" even though "we know that relevant email exchanges were taking place at Moss Adams concerning Meridian shortly before issuance of the Subpoena" and now "[t]here is no way to know how many emails existed on this server when the Subpoena was served which have now been destroyed." [*Id.* at 21:13-24]

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 12 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 13 of 20

- "Moss Adams failed to deliver paper documents promptly to the Trustee in response to the Subpoena" and even "assuming Ms. Quirk did in fact deliver paper documents to Lighthouse (there is no evidence that she did), it was not reasonable to deliver these documents … to a third-party vendor with no written instructions of any kind to K&L Gates that it should contact the vendor to obtain copies of the documents." [*Id.* at 21:25-22:1]

- "Ms. Quirk admittedly failed to review the billing records to make sure that every Moss Adams employee who worked on a Meridian or Berg matter was advised of the Subpoena and of their individual responsibility to preserve and collect documents." [*Id.* at 22:1-5]

As the foregoing makes clear, the focus of this case was not trial balances, and Moss Adams was not held in contempt based on a finding it did not produce trial balances (even though it is undisputed no trial balances were produced pre-dating adoption of the PFX system in 2004). In fact, the Court made this very clear at the hearing on the Trustee's Motion for Fees, stating:

> I agree with what Mr. Avenatti said, that there's a lot more to this case than trial balances and loan ledgers. And this case is about all of the documents that were produced after the time that they should have been produced, including, without limitation, the Lighthouse documents, the billing records, and the other documents I identified in my memorandum decision.
> [5/17/12 Tr. at 34:22-35:4]

Accordingly, even if the Court assumed the truth of and considered these "new facts," the "new facts" about *some* trial balances and loan ledgers allegedly being in Moss Adams' production or Meridian's files do not in any way change the Court's analysis or provides any grounds for reconsidering the Court's order.

### D. MOSS ADAMS' QUESTIONS ABOUT THE TRUSTEE'S CREDIBILITY ARE UNJUSTIFIED

Throughout its Motion, Moss Adams erroneously questions the Trustee's credibility. Specifically, Moss Adams questions the credibility of the Trustee's testimony regarding (a) Moss Adams' production of trial balances and loan ledgers and (b) the Trustee's access to Meridian records. Convicted felon Darren Berg also filed a declaration questioning the Trustee's credibility

| | |
|---|---|
| TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION **(No. 10-17952)** - 13 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 14 of 20

as it relates to Meridian's records.[13] Moss Adams and Berg's arguments lack merit.

### 1. The Trustee's Testimony Regarding Production Of Trial Balances And Loan Ledgers By Moss Adams

At the evidentiary hearing, the Trustee testified as to certain examples of documents that should have been produced but were not, including trial balances. [Declaration of Mark Calvert ("Calvert Decl."), ¶ 2.] For instance, Moss Adams did not produce the Lighthouse documents, which contained the work papers for 1999 through approximately 2004 until late 2012. Indeed, Moss Adams does not even claim it produced *all* trial balances; rather, Moss Adams carefully and creatively instead claims it produced "numerous" trial balances. *But the Trustee's Subpoena did not ask for "numerous" documents, it did not ask for "numerous" work papers, and it did not ask for "numerous" trial balances and loan ledgers. Instead, it requested, and Moss Adams was required to, produce ALL responsive documents. Moss Adams and Mr. Urquhart fail to address this glaring deficiency because they simply are unable to.*

These examples offered by the Trustee were not meant in any way to be an exhaustive list of the numerous types of documents Moss Adams failed to produce – they were merely meant to be examples. [Calvert Decl., ¶ 2] Had the Trustee meant his testimony to provide an exhaustive list, the Trustee would have testified to a number of additional individual work papers and emails Moss Adams failed to timely produce but later produced after motion practice began (i.e. the Lighthouse documents). [*Id.*] Importantly, it has never been the Trustee's obligation to inform Moss Adams of every document the firm failed to timely produce nor would the Trustee necessarily have the requisite knowledge to determine every document Moss Adams failed to produce because they were Moss Adams' documents. [*Id.*]

The Trustee's review of the work papers produced by Moss Adams was severely hampered by the method in which Moss Adams produced the documents and the fact that they were not

---

[13] The Trustee objects to Mr. Berg's submission and requests that it be stricken, on the grounds that Mr. Berg's filing was unauthorized and that Mr. Berg had full notice of the contempt hearing and failed to timely file any papers at that time. Accordingly, he cannot now attempt to introduce "evidence" months after the hearing.

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 14 | OSBORN MACHLER<br>2125 Fifth Avenue<br>Seattle, WA 98121<br>206-441-4110 |
|---|---|

produced as kept in the ordinary course of business. [Calvert Decl., ¶ 3] Despite this fact, since the hearing on February 14, 2013, the Trustee had had occasion to again review Moss Adams' production of documents in August 2010. [*Id.*] Following this review, the Trustee concluded the following: (1) Moss Adams did produce some, but certainly not all, of the trial balances and loan ledgers in August 2010 and (2) Moss Adams' did not produce all documents and work papers they were required to produce in August 2010, including all trial balances and loan ledgers, and this hampered my efforts as Trustee. By trial balances the Trustee means all types of trial balances (including but not limited to work trial balances, loan trial balances, REO trial balances, investor trial balances, and all subsidiary trial balances) for all of the relevant funds for all relevant years. [*Id.*]

### 2. **The Trustee's Testimony Regarding His Access To Meridian's Records**

Contrary to Moss Adams' assertions, the Trustee did not testify at the evidentiary hearing that he did not have any access to any of Meridian's records. The Trustee testified at various times about access he did have to Meridian's records, including as to the lack of reliable accounting records within those records. Moss Adams nonetheless takes out of context testimony by the Trustee regarding the records of Meridian. Seeing as the Trustee testified about having records of Meridian, he did not mean to convey that he did not have *any* of Meridian's books, but rather meant to convey he did not have *all* of Meridian's books and supporting records. [Calvert Decl., ¶ 4] And, as to those records the Trustee did have, he quickly determined that such records,[14] and especially Meridian's electronically stored information ("ESI") had major problems. [*Id.*] For example, (a) there were errors in the data; (b) the files were incomplete; (c) not all the information was stored in one place; (d) there were different versions of the same document with different numbers; and (e) some early files were missing that were needed to show

---

[14] Contrary to the assertions of Mr. Berg, Meridian did not operate a paperless office. [Calvert Decl., ¶ 4] Four to five pallets of Meridian paper documents were seized by the FBI, and a significant amount of information was not stored electronically. [*Id.*]

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 15 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |

the flow of funds. [*Id.*] Thus, in short, Meridian's records did not have all the documents the Trustee needed, including all necessary trial balances, and even if a document existed on Meridian's servers,[15] that did not mean the document was accurate or that the document tied to the audited financial statements. [*Id.*]

### 3. The Importance Of Moss Adams' Work Papers Given The Unreliability Of Meridian's Records

Because Meridian's electronically stored information ("ESI") information was incomplete and would not tie to the audited financial statements, the trustee sought *all* work papers, including all trial balances and loan ledgers, from Moss Adams. [Calvert Decl., ¶ 6] Specifically, as a result of the problems with Meridian's ESI, the Trustee determined that a complete set of Moss Adams' work papers would provide a focal point to start his forensic analysis and that such documents from Moss Adams would help show the reliability (or lack therefor) of the ESI and hard copy records of Meridian. [*Id.*] That is, the Trustee decided the best place to start unraveling the puzzle was with the audited financial statements, tying those back to the trial balances in Moss Adams' possession supporting the financial statements, tying those back to the working trial balances, tying those back to the source documents, etc. [*Id.*] Specifically, the Trustee's original plan was to take each year's audit, prove the fraud existed in that year's balance sheet and document the insolvency at the end each year, then roll forward the balance sheet each year, carrying forward the fraud which was proven in prior years and document the new fraud each year. [*Id.*] However, Moss Adams failure to produce *all* work papers for every year starting with 1999 (i.e. starting with the Lighthouse documents) made this impossible. It was for this reason that the Trustee reverted to a cash in and cash out analysis using bank statements. [*Id.*]

---

[15] With regard to Meridian's Quickbooks in particular, not all of Meridian's books were kept on Quickbooks and Meridian's Quickbooks did not include loan trial balance detail. [Calvert Decl., ¶ 5] While there was a balance in Quickbooks for loans receivable, the Trustee was looking for the detail that tied to the financial statements so that he could confirm the loan was paid off. [*Id.*]

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 16 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |

### E. THE EVIDENCE IS CLOSED AND DUE PROCESS DOES NOT REQUIRE THAT THE COURT REOPEN THE EVIDENCE

"Due process" does not provide a ground for Moss Adams to reopen the evidence and present additional evidence to the Court. That is the case for at least two reasons. First, if this Court were going to consider the "evidence" presented by Moss Adams, it would have to reopen the evidence such that the Trustee could respond, which would run contrary to the important policy regarding the finality of proceedings. Doing so is unnecessary, unjust and not required. Second, Moss Adams' argument is based on its false assertion that trial balances did not come up until after 5:00 p.m. on the date of the evidentiary hearing. As noted above, at 2:17 p.m. the Trustee's counsel questioned Mr. Kallander regarding whether Moss Adams had produced any trial balances. Prior to the hearing, the Trustee also repeatedly asserted that not all work papers had been produced. Trial balances are part of the work papers. Despite both of these facts, at no point in time did Moss Adams' counsel solicit testimony from Mr. Kallander, Ms. Quirk or Mr. Urquhart that some trial balances were produced, nor did Moss Adams' counsel undertake other efforts to argue that some trial balances had in fact been produced. Due process does not provide an avenue for Moss Adams to change that decision or fix that failure now.

Moss Adams' reliance on *In re Peters*, 642 F.3d 381 (2011) is completely misplaced. Unlike in *In re Peters*, Moss Adams had notice of the charges against it (i.e. that it did not take all reasonable steps to comply). Moss Adams also had notice that the Trustee asserted not all work papers had been produced. Moss Adams also called multiple witnesses to the stand after Mr. Kallander was questioned regarding trial balances, and failed to solicit testimony from any of them regarding production of any trial balances or what exactly the production included. Thus, unlike the party in *In re Peters* that did not have adequate notice of the disciplinary charges against her and "ran out of time" at trial to address new charges against her, Moss Adams had full notice of the charges against it, had a full day to prove it took all reasonable steps to comply, and did not "run out of time" to introduce testimony regarding production of trial balances. Rather,

| **TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 17 | OSBORN MACHLER 2125 Fifth Avenue Seattle, WA 98121 206-441-4110 |

Moss Adams failed to do so despite multiple opportunities, choosing instead to solicit testimony from witnesses on other topics.

### IV. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court deny Moss Adams' Motion for Reconsideration. The Trustee also requests such other and further relief as the Court deems just and proper.

DATED: May 24, 2013

| EAGAN AVENATTI, LLP | OSBORN MACHLER |
|---|---|
| /s/ Michael J. Avenatti | /s/ Simeon Osborn |
| Michael J. Avenatti (Pro hac vice) | SIMEON OSBORN, WSBA No. 14484 |
| Attorneys for Trustee Mark Calvert | Attorneys for Trustee Mark Calvert |

**TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S
MOTION FOR RECONSIDERATION OF THE COURT'S
APRIL 5, 2013 MEMORANDUM DECISION
(No. 10-17952)** - 18

OSBORN MACHLER
2125 Fifth Avenue
Seattle, WA 98121
206-441-4110

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 19 of 20

# CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, I electronically filed the foregoing with the Clerk of the U.S. Bankruptcy Court for the Western District of Washington using the CM/ECF system, which will send notification of such filing to the following:

>Kelly P. Corr
>Steven W. Fogg
>Corr Cronin Michelson Baumgardner & Preece
>1001 Fourth Avenue, Suite 3900
>Seattle, WA 98154
>kcorr@corrcronin.com
>sfogg@corrcronin.com
>Attorneys for Defendant Moss Adams LLP

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECM participants:

>Frederick Darren Berg
>Inmate No. 17950-086
>FCI Lompoc
>Federal Correction Institution
>3600 Guard Road
>Lompoc, CA 93436
>*Pro Se*

Dated May 24, 2013, at Seattle, Washington.

                                          /s/ Kathryn R. Bue
                                          Kathryn R. Bue

**TRUSTEEE'S OPPOSITION TO MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION (No. 10-17952)** - 1

OSBORN MACHLER
2125 Fifth Avenue
Seattle, WA 98121
206-441-4110

Case 10-17952-TWD    Doc 1111    Filed 05/24/13    Ent. 05/24/13 19:41:39    Pg. 20 of 20