**Below is the Order of the Court.**

*[signature]*

Karen A. Overstreet
U.S. Bankruptcy Judge
**(Dated as of Entered on Docket date above)**

---

Karen A. Overstreet
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>CONSOLIDATED MERIDIAN FUNDS,<br>a/k/a MERIDIAN INVESTORS TRUST, et al.<br><br>Debtors. | Case No. 10-17952<br><br>ORDER ON MOSS ADAMS LLP'S MOTION FOR RECONSIDERATION OF THE COURT'S APRIL 5, 2013 MEMORANDUM DECISION |

This matter came before the Court on Moss Adams LLP's Motion for Reconsideration of the Court's April 5, 2013 Memorandum Decision (the "Motion for Reconsideration"). Dkt. 1067. The Motion for Reconsideration asserts that the Court's April 5, 2013 Memorandum Decision (the "Decision") [Dkt. 1051] should be vacated on account of manifest legal error, new evidence and because the due process rights of Moss Adams LLP ("Moss Adams") were violated. Subsequent to the issuance of the Decision, the Court entered an Order On Trustee Mark Calvert's Motion to Hold Moss Adams, LLP In Contempt For Failing To Comply With

Order - 1

Subpoena Issued Pursuant to Fed.R.Bankr.P.2004 (the "Contempt Order"), which held Moss Adams in contempt for failing to use all reasonable efforts to comply with a subpoena issued by the Trustee pursuant to Bankruptcy Rule 2004 and authorized by the bankruptcy court on August 5, 2010 (the "Subpoena"), determined that Moss Adams' contempt warrants civil sanctions, and set a hearing for May 17, 2013, to determine the amount of civil sanctions to be awarded. Dkt. 1066.[1]

## I. STANDARD

A motion for reconsideration is to be filed within 14 days after the order to which it relates is filed. Civil Rule 7(h)(2), Local Rules W.D. Wash.[2] Motions for reconsideration are disfavored in this district. The local federal district court rules direct that a court should:

> [O]rdinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Civil Rule 7(h)(1), Local Rules W.D. Wash. The bankruptcy court does not have an inherent ability to reconsider or reform its prior orders. *In re Mulvania*, 214 B.R. 1 (9th Cir. BAP 1997).

The Motion for Reconsideration was filed within 14 days of the entry of the Decision and the Contempt Order. Accordingly, the Court will treat it as arising under Fed. R. Civ. P. 52(b) and Fed. R. Civ. P. 59(e).

> A motion under Fed.R.Civ.P. 59(e) "should not be granted absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.2d 1253, 1255 (9th Cir. 1999)(en banc)(quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also* Fed.R.Civ.P. 60(b).

---

[1] Terms capitalized in this Order but not defined shall have the meanings given to them in the Decision.
[2] As a technical matter, the Motion for Reconsideration should have been directed at the Contempt Order rather than the Decision. See Rule CR 10(h), Local Rules W.D. Wash. Nevertheless, the Court will address the Motion for Reconsideration.

Order - 2

*Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001). Similarly, Rule 52(b) provides the court an opportunity to correct manifest errors of fact or law, or to consider new evidence not available at trial, or consider a change in the controlling law. *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 2008 WL 1805828 (S.D. Cal. April 21, 2008). A motion under Rule 52(b) is not properly granted, however, where the proposed additional facts do not alter the outcome of the case or are immaterial to the court's conclusions. *Id.* (citing *Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1352 (9th Cir. 1985)).

## II. DISCUSSION

### A. An Order to Compel Is Not A Pre-Condition to a Finding of Contempt.

Moss Adams argues that the Court's decision to hold it, a non-party, in contempt without first issuing an intervening order directing compliance with the Subpoena constitutes manifest legal error. Moss Adams specifically contends that the Decision neither identifies any cases in which a non-party was held in contempt for violating a subpoena without an intervening court order, nor addresses cases where courts did not hold non-parties in contempt without an intervening court order. Specifically, Moss Adams argues that the Court failed to consider two cases it cited, *Walker v. Asset Mktg. Sys. Ins. Servs. LLC*, 2012 WL 827010 (S.D. Cal. Mar. 9, 2012) and *In re Application of the Kingdom of Morocco*, 2009 WL 1059786, (S.D.N.Y. Apr. 16, 2009). The Court in fact considered these two cases but did not mention them in its Decision. Failure to address in a written decision each and every case cited by the parties, however, does not constitute error mandating reconsideration of the decision. More importantly, neither of these cases is binding on the Court nor mandates a change in the Decision.

In *Walker*, a subpoena for document production was served on Asset Marketing Systems Insurance Services LLC ("AMS") on July 1, 2011. On July 20, 2011, AMS informed the

Order - 3

petitioners' counsel that "as drafted, the document request is both overly broad and unduly burdensome." The petitioners eventually filed a motion for an order to show cause why AMS should not be held in contempt for violating the subpoena, and over the next few months leading up to the court's ruling, AMS made a series of partial document productions. The *Walker* court stated that, although AMS did not timely object to the subpoena, "it is inaccurate to say that it never objected to the subpoena, as it did object via email on July 20, 2011 that the document requests in the subpoena were overly broad and unduly burdensome." *Walker,* 2012 WL 827010 at *3. The court ultimately denied the contempt request, reasoning that "Rule 45 imposes a duty upon a party or attorney serving a subpoena to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* The court further reasoned that contempt was unwarranted because "AMS has demonstrated throughout a willingness to cooperate and to obtain the documents sought by Petitioners, to the detriment of AMS's own business functioning, and the Court is satisfied by AMS's explanations for the delays." *Id.* at *4.

The facts of *Walker* are different than the facts of this case. In *Walker*, the court implied an objection based on AMS's communication that the subpoena was "overly broad and unduly burdensome." In this case, Moss Adams never filed an objection to the Subpoena and never complained to counsel for the Trustee that the document requests in the Subpoena were overly broad or unduly burdensome. Given the broad scope of the Subpoena and the short amount of time provided for production, Moss Adams may have had legitimate grounds to raise these issues. Moss Adams, however, determined that it should comply fully with the requested production by the specified production date. Furthermore, the one minor issue Moss Adams had with the Subpoena (concerning Berg's personal tax records) was raised in a timely fashion and resolved appropriately. Also, unlike in *Walker*, where the court noted that it was "satisfied by

Order - 4

AMS's explanations for the delays," in this case, as stated in the Decision, the Court was not satisfied with Moss Adams' explanations for the delays.

In *Morocco*, Aldi failed to respond to two subpoenas, and failed to appear at a hearing on a motion for an order to show cause why he should not be held in contempt for violating the subpoenas. *Morocco*, 2009 WL 1059786, at *1. The *Morocco* court concluded that, pursuant to Rule 45(e), it had the power to hold Aldi in contempt. *Id*. at *2. The court, however, reasoned that "courts in the Second Circuit have often held that before imposing sanctions under Rule 45(e) for failure to comply with an attorney-issued subpoena, a court should first issue an order compelling compliance with the subpoena." *Id*. The court ultimately held that the appropriate action was to order Aldi to *immediately* comply with Morocco's subpoena, thus permitting him "one final opportunity to avoid being held in contempt of court." *Id*. While *Morocco* suggests that the Second Circuit may favor Moss Adams' arguments, that court's holding is merely persuasive in this case.

Instead of relying on *Walker* and *Morocco*, the Court chose to rely on *Pennwalt Corp. v. Durand-Wayland, Inc*., 708 F.2d 492 (9th Cir. 1983), a case in which the Ninth Circuit Court of Appeals provided guidance on when contempt sanctions may be warranted for noncompliance with a subpoena under Rule 45. Decision at 18. The *Pennwalt* court held that

> Having objected, Sunkist was not obligated to produce the subpoenaed documents, or even to search for them, until Pennwalt obtained an order directing compliance.… Because Pennwalt failed to obtain an order directing compliance with its subpoena duces tecum, Sunkist's noncooperation could not be deemed a contempt under Rule 45(f).

*Id.* at 494. The *Pennwalt* court, however, explained in a footnote that "a subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions. Once the person subpoenaed objects to the subpoena, however, the provisions of Rule 45(d) come into play and

Order - 5

the party seeking discovery must obtain a court order directing compliance." *Id.* at FN. 5.  The guidance provided by the Ninth Circuit Court of Appeals in *Pennwalt* constitutes mandatory authority that directly relates to the facts of this case.  Under the *Pennwalt* court's reasoning, the Subpoena was itself a court order subjecting Moss Adams to sanctions for noncompliance because Moss Adams never raised any objections to the Subpoena.

Given the high standard applicable to motions for reconsideration, the Court concludes that neither its failure to explicitly address *Walker* or *Morocco* in the Decision nor its reliance instead on *Pennwalt* can be considered errors rising to the level of manifest legal error.

### B. The Court Need Not Reconsider Its Decision on Account of Newly Discovered Facts.

Moss Adams contends that in overcoming its reluctance to find contempt, the Court made errors of fact in concluding that there were "unique facts" justifying contempt in this case. Indeed, the Court acknowledged in the Decision that it was reluctant to invoke its contempt powers against a non-party absent the prior issuance of a court order compelling compliance, but overcame that reluctance due to the "unique facts" of the case.  Decision at 20.   Moss Adams' argument, however, depends almost entirely on its contention that the Trustee misrepresented at the hearing his access to trial balances for the Meridian Funds.  Moss Adams asserts that new evidence shows that the Trustee had access to the trial balances which were included with Moss Adams' initial production in August 2010 and because the Trustee had access to the QuickBooks files of the Meridian Funds, which Moss Adams argues contained trial balances.

Moss Adams misunderstands the facts which the Court found unique so as to justify the contempt finding.  The "unique facts" upon which the Court relied were the repeated assurances by Moss Adams that it had fully complied with the Subpoena, which assurances would naturally lead the Trustee to conclude that *there was no reason to file a motion to compel.*  If Moss Adams

Order - 6

had failed entirely to respond to the Subpoena, the Court would agree that the burden would be on the Trustee to initiate compliance by filing a motion to compel. That, however, is not what happened in this case. In this case, the Subpoena was issued pursuant to a valid court order, Moss Adams did not object to the Subpoena, turned over a substantial amount of documents in response to the Subpoena, and repeatedly assured the Trustee there were no other responsive documents. The evidence showed unequivocally that there were plenty more documents that should have, but were not, turned over to the Trustee.

Moss Adams would have the legal fees and costs incurred by the Trustee to gain Moss Adams' compliance with the Subpoena paid by the creditors of the bankruptcy estate, who have already lost millions, because, in Moss Adams' view, the Trustee should have advised Moss Adams as to what he thought was missing. Specifically, Moss Adams argues that if trial balances were missing from the initial production and the information was so critical to the Trustee's understanding of the estate assets, he should have so advised Moss Adams. Having failed to do so, Moss Adams contends that it was the Trustee's fault that documents were not forthcoming. As the Court held in its Decision, it is not the burden of the Trustee to determine what is missing; it was the burden of Moss Adams to take all reasonable steps to comply with the terms of the Subpoena.

Moreover, the burden was on Moss Adams to comply fully with the Subpoena *even if the Trustee could obtain or had obtained* the identical or similar financial information from other sources and *even if the Trustee was not prejudiced by Moss Adams' failure to comply*. Moss Adams would have the Court create a new standard for judging compliance with a 2004 subpoena: a party need not comply as long as the Trustee has not identified anything missing from the initial production, if the information is available from a different source, or if after-the-

Order - 7

fact, the court determines that the Trustee suffered no prejudice from the noncompliance. The test for compliance under Rule 45, Fed.R.Civ.P., is simple: when a court finds noncompliance with a subpoena, the burden shifts to the nonparty to demonstrate that it took all reasonable steps within its power to ensure compliance. *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). If the nonparty cannot meet that burden, contempt may be found and sanctions of a remedial nature may be awarded against it. As the Court explained in its Decision, whether the Trustee was prejudiced by the noncompliance has no bearing on whether Moss Adams can be held in contempt for noncompliance with the Subpoena. Prejudice is relevant only to the type and amount of the sanction to be imposed. Decision at 22-24. The Court thus far has awarded the Trustee sanctions in the form of reimbursement for his legal fees and costs incurred in enforcing Moss Adams' compliance with the Subpoena. The Court has not ordered any payment to the Trustee to compensate him for what he contends was Moss Adams' failure to timely produce all trial balances related to the Meridian Funds.

**C.   There Is No New Evidence Mandating Reconsideration.**

Moss Adams argues that new evidence shows that trial balances were included with its initial production in August of 2010. Moss Adams contends that this is "new evidence" because the Trustee did not raise the issue of missing trial balances or loan ledger information until the very end of the evidentiary hearing. According to the Court's time-keeping records, counsel for the Trustee commenced the direct examination of the Trustee at 5:18 pm on the day of the evidentiary hearing. That examination concluded and the cross examination of the Trustee commenced by counsel for Moss Adams at 5:30 pm. The cross examination of the Trustee concluded at 5:50 pm. The transcript reflects, however, that in the 20 minutes of cross examination, not one question was asked by counsel for Moss Adams which challenged the

Order - 8

Trustee's direct testimony that he had not received trial balances in response to the Subpoena. Consequently, it is not the case that Moss Adams did not have the opportunity to challenge the Trustee on this point. Moss Adams brought to the courtroom hard copies of all of the documents it contended were produced on the two discs delivered to K&L Gates on August 26, 2010. No attempt was made to use those documents, which were in the courtroom, to demonstrate to the Trustee that his testimony was untruthful or incorrect.

Moss Adams also contends that new evidence in the form of interview notes from an August 24, 2010 meeting between the Trustee and the FBI (obtained by Moss Adams from Berg's filing of a habeas corpus petition in the U.S. District Court) shows that the Trustee had, from the date of his appointment, access not just to Mr. Berg's personal QuickBooks files (as he claimed at the hearing), but also that he had access to the QuickBooks files of the Meridian Funds. Moss Adams contends that Meridian's QuickBooks files contained trial balances and loan ledgers, thus the Trustee did not need them from Moss Adams.

Even if the Trustee had access to Meridian's QuickBooks files, that would not obviate the duty of Moss Adams to respond fully to the Subpoena. The Trustee had good reasons *not to trust* the internal records of Meridian. By issuing the Subpoena to Moss Adams, he was looking for corroboration of his suspicions that Berg was engaged in a fraudulent scheme. Further, whether Moss Adams produced *some* but clearly not *all,* trial balances and loan ledger information in August 2010, relates only to the extent to which the Trustee was prejudiced by Moss Adams' failure to comply with the Subpoena.[3] Prejudice to the Trustee is not a precondition to the Court's finding of contempt; instead, it relates solely to the amount of damages that should be awarded to the Trustee on account of Moss Adams' contempt. None of

---

[3] No trial balances or loan ledgers for the years prior to 2004 were initially produced because they were in hard copy form and not contained in Moss Adams PFX system. *See* Decision at 21.

Order - 9

the "new" evidence offered by Moss Adams addresses the reasonable steps Moss Adams failed to take to comply with the Subpoena.

**D.     Prejudice and Damages.**

In its Reply, Moss Adams contends that the Trustee testified falsely at the evidentiary hearing (i) that he did not receive trial balances and loan ledgers from Moss Adams prior to the filing of his motion to hold Moss Adams in contempt, and (ii) that he had no access to Meridian's records until the records were returned to him by the FBI. Reply, Dkt. 1116.  Mr. Calvert responds with a Declaration in Support of the Trustee's Opposition to Moss Adams LLP's Motion for Reconsideration of the Court's April 5, 2013 Memorandum Decision (the "Calvert Decl."). In paragraph 2 of that declaration, Mr. Calvert states that his testimony at trial concerning trial balances and loan ledgers was meant only to give the Court "examples" of the documents that he thinks should have been timely produced by Moss Adams.  He goes on further to state that after re-reviewing the August 2010 production by Moss Adams, he has concluded that Moss Adams "did produce *some* but not *all,* of the trial balances and loan ledgers in August 2010." Calvert Decl., para. 3 (emphasis in original).  Mr. Calvert's testimony at the evidentiary hearing, however, was unequivocal, as reflected in the hearing transcript:

> Q. At any point in time prior to late 2012 did Moss Adams ever produce any documents relating to a trial balance for any of the funds, to the best of your knowledge?
>
> A. No.

2/14/2013 Tr. (Afternoon) at 187:12-15.   The Trustee's testimony continued with statements meant to convey that he did not have a single trial balance:

> If I had a loan trial balance, I would have been able to say which loans were bogus and which loans were real.  I would have been able to identify loans that had been taken off or were no longer on

Order - 10

> the listing that would have allowed me to identify theft, as when I
> immediately came in, Berg was still stealing from the estate."

*Id.* at 181:23-182:4.

> I didn't have a loan trial balance. I didn't have the detail
> associated with a loan trial balance, all of which are normal in the
> workpapers from my past experience as an auditor.

*Id.* at 187:22-188:8.

With regard to his access to Meridian's records, Mr. Calvert states in his Declaration that he "certainly did not mean to convey that [he] did not have *any* of Meridian's books, but rather meant to convey [he] did not have *all* of Meridian's books and supporting records." Calvert Decl. at para. 4. Yet, at trial, he said just that:

> Specifically, the FBI and Department of Justice came in and seized
> all the financial records of the company on August 27th. So at that
> point I had no financial records."

*Id.* at 184:7-10.

> I was able to get Darren Berg's personal QuickBooks, which
> painted the picture pretty clearly, pretty quickly, that he had been
> stealing money and the nature and extent of that stealing of money.
> But that was Darren's personal books. I did not have Meridian's
> books. I didn't have a loan trial balance. I didn't have the detail
> associated with the loan trial balance….

*Id.* at 184:23-185:6.

Although this Court finds, as indicated above, that whether the Trustee was prejudiced by what he contends was Moss Adams' failure to timely produce trial balances and loan ledgers goes to the question of whether he is entitled to damages for increased costs to the estate, his conflicting testimony described above is of great concern to the Court. At the May 17, 2013 hearing on sanctions, the Court declined to award the Trustee $50,895 in fees he contends were incurred by him as a consequence of Moss Adams' failure to timely provide discovery, finding

Order - 11

that the Trustee had failed to provide sufficient information as to how those fees were calculated. The Court held that Moss Adams had the right to discovery and a further hearing before the Court would make a final ruling on the Trustee's additional fees.

The Decision sets forth in detail why the Court found that Moss Adams failed to take all reasonable steps to ensure compliance. There is no new evidence which would mandate reconsideration of that determination. However, as to damages, the thrust of the Trustee's prejudice argument was his professed failure to have loan ledgers and trial balances in a timely fashion from Moss Adams. At a minimum, Moss Adams has discredited the Trustee's testimony on this issue. Accordingly, while the Court will not disturb its ruling on contempt, the Court concludes that the Trustee should not be permitted to recover any additional compensation.

**E.  Due Process.**

Moss Adams argues that due process requires that it be afforded an opportunity to rebut the Trustee's testimony regarding the trial balances and loan ledger information. Moss Adams specifically contends that this issue was never raised in any briefing or communication prior to 5:30 p.m. on the day of the evidentiary hearing during the Trustee's examination.

In support of this argument, Moss Adams references *Little v. Kern County Superior Court*, 294 F.3d 1075, 1080 (9th Cir. 2002) ("[T]he Supreme Court has held that due process requires that the contemnor be given '"reasonable"' notice of the specific charges and opportunity to be heard in his own behalf."); *In re: The Catholic Bishop of Spokane*, 2010 U.S. Dist. LEXIS 116208, at *24 (E.D. Wash. October 28, 2010) ("Due process further requires that notice and opportunity to be heard be given prior to imposing sanctions. The notice must be advice of the specific conduct alleged to be sanctionable…"); and *Nuwesra v. Merrill Lynch*, 174

Order - 12

F.3d 87, 92 (2d. Cir. 1997) ("Due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions.").

A Court has authority to control its own docket by imposing time limits on the time for trial and the presentation of live testimony. Both parties were given an equal opportunity to put on their respective cases. Moss Adams' sole complaint is that it was not aware until 5:00 pm the day of trial that the Trustee was contending that he was prejudiced by the failure to timely obtain from Moss Adams trial balances and loan ledgers. Moss Adams had an opportunity to cross examine the Trustee, however, and never pursued any line of questioning regarding these records. *See supra* at 8, 9.

The Court concludes that Moss Adams has not been denied any rights of due process. Moreover, the Court has determined that it will deny the balance of the Trustee's fee request without further proceedings.

**F.     Berg's Submission.**

On May 8, 2013, Mr. Berg filed a declaration containing his thoughts on the Trustee's contempt action against Moss Adams. Dkt. 1093. The Declaration was filed after the conclusion of the evidentiary hearing. More importantly, Mr. Berg is not a party to the Trustee's contested action against Moss Adams. Therefore, he has no standing to submit evidence or legal arguments related to this matter. The Court will grant the Trustee's motion to strike Mr. Berg's declaration.

**ORDER**

NOW, THEREORE, for the foregoing reasons, it is hereby ORDERED as follows:

1.     The Motion for Reconsideration is DENIED.

2.     The Trustee's request for contempt damages in the amount of $50,895 is DENIED.

Order - 13

3. The Declaration of Frederick Darren Berg [Dkt. 1093] is STRICKEN.

///**END OF ORDER**///

Order - 14